## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOSEPH FOLINO, AN INDIVIDUAL; AND NICOLE FOLINO, AN INDIVIDUAL,<br>Appellants,<br>vs.<br>TODD SWANSON, AN INDIVIDUAL; TODD SWANSON, TRUSTEE OF THE SHIRAZ TRUST; SHIRAZ TRUST, A TRUST OF UNKNOWN ORIGIN; AND LYONS DEVELOPMENT, LLC, A NEVADA LIMITED LIABILITY COMPANY,<br>Respondents. | No. 81252<br><br>**FILED**<br><br>MAR 16 2022<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>DEPUTY CLERK |
| JOSEPH FOLINO, AN INDIVIDUAL; AND NICOLE FOLINO, AN INDIVIDUAL,<br>Appellants,<br>vs.<br>TODD SWANSON, AN INDIVIDUAL; TODD SWANSON, TRUSTEE OF THE SHIRAZ TRUST; SHIRAZ TRUST, A TRUST OF UNKNOWN ORIGIN; AND LYONS DEVELOPMENT, LLC, A NEVADA LIMITED LIABILITY COMPANY,<br>Respondents. | No. 81831 |

### *ORDER OF AFFIRMANCE*

These are consolidated appeals from a district court order granting summary judgment and a post-judgment order granting attorney fees and costs in a tort action. Eighth Judicial District Court, Clark County; James Crockett, Judge.

Joseph and Nicole Folino purchased a residential property in Las Vegas from Todd Swanson, the Shiraz Trust, and Lyons Development,

SUPREME COURT
OF
NEVADA

(O) 1947A

22-08363

LLC (collectively, Swanson) in late 2017. Swanson completed and provided the statutorily-required Seller's Real Property Disclosure (SRPD) form to the Folinos prior to purchase.

Shortly before the scheduled closing of escrow on the property, Swanson's assistant discovered a leak in the master bedroom closet area. Swanson hired Rakeman Plumbing, which identified that the leak was coming from the plumbing system and began repairs under warranty. Swanson informed the Folinos about the leak and planned repairs through an addendum to the purchase agreement.

With this knowledge and understanding that a mold test relating to the recent leak was not yet completed, the Folinos decided to move forward with purchasing the property and closed escrow on the scheduled date. Approximately a week later, the company that completed the inspection sent the report to Rakeman, indicating elevated mold levels in the master bedroom closet. The warranty company then informed the Folinos that it identified a limited manufacturing issue from the tubing samples from the property and recommended replacement of plumbing tubing throughout the property. Through this communication with the warranty company, the Folinos learned there was a prior water leak in the same area in the property that Rakeman also repaired under warranty earlier that year.

The Folinos thereafter sued Swanson, alleging Swanson failed to disclose water damage, mold, and systemic plumbing defects in the property, including failure to report prior water conditions on the SRPD form. The district court dismissed five claims and allowed the Folinos to proceed on claims for fraud/intentional misrepresentation and for failing to disclose known defects as required by NRS Chapter 113.

Swanson again moved to dismiss, the Folinos countermoved for discovery, and the district court granted the Folinos 90 days to conduct discovery. Shortly thereafter, Swanson made a NRCP 68 offer of judgment to the Folinos. The Folinos did not accept the offer.

The Folinos conducted extensive discovery and learned that, when the home was almost fully built in 2015, Swanson had the property inspected. The inspection report recommended repairing two recirculation pumps and identified "a plumbing leak above the ceiling of the basement bathroom." Swanson's notes on the inspection report indicated the recirculation pumps were fixed by a plumber. Regarding the leak above the ceiling of the basement bathroom, Swanson wrote, "They couldn't find it. I'll monitor." There is no indication from Swanson, the Folinos, or the Folinos's inspection prior to closing that the leak above the basement bathroom was observed ever again in the property.

Following supplemental briefing, the district court granted Swanson's motion to dismiss, construing the motion as seeking summary judgment because the parties presented matters outside of the pleadings. Relying on *Nelson v. Heer*, 123 Nev. 217, 163 P.3d 420 (2007), the district court granted summary judgment, finding Swanson was not required to disclose the prior water leaks pursuant to NRS Chapter 113 because the prior leaks were fully repaired and did not negatively impact the value or use of the property.

Swanson also moved for attorney fees and costs, which the district court awarded from the time Swanson presented the offer of judgment.

The Folinos appeal the summary judgment and post-judgment orders.

*The district court properly relied on* Nelson *and granted summary judgment*

On appeal, the Folinos assert the district court incorrectly applied *Nelson* and granted summary judgment to Swanson regarding claims for violations of NRS Chapter 113 and intentional misrepresentation. The Folinos assert Swanson violated the requirements of NRS Chapter 113 when Swanson answered "No" in response to the question on the SRPD form asking, "Are you aware of any of the following?: 1. Structure: (a) Previous or current moisture conditions and/or damage?" They further argue Swanson engaged in intentional misrepresentation by answering "No" to this question, as well as the question about previous or current fungus or mold. To assert these claims, the Folinos contend that *Nelson*'s interpretation of NRS Chapter 113 does not apply because the SRPD form language allegedly changed since *Nelson* was decided to require additional disclosures. They also contend the district court did not consider all prior leaks and that the district court improperly relied on an affidavit from Rakeman regarding prior repairs.

This court reviews a district court summary judgment order de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*; *see also* NRCP 56(a). Additionally, all evidence must be viewed in the light most favorable to the nonmoving party. *Wood*, 121 Nev. at 729, 121 P.3d at 1029. However, to withstand summary judgment, the nonmoving party must present specific facts showing a genuine issue of material fact supporting its claim exists and cannot rely solely on general allegations or conclusions in the pleadings. *Id.* at 730-31, 121 P.3d at 1030-31; *see also* NRCP 56(e).

Under NRS 113.130, a seller of residential property must complete a disclosure SRPD form about the property and provide it to the purchaser at least ten days before the property is conveyed. NRS 113.130(1)(a). A seller must disclose defects, defined as "condition[s] that materially affect[ ] the value or use of residential property in an adverse manner." NRS 113.100(1); *Nelson*, 123 Nev. at 223, 163 P.3d at 425.

If a seller discovers a new defect before conveying the property, the seller must disclose the newly-discovered defect to the purchaser "as soon as practicable after the discovery of that fact but in no event later than the conveyance of the property to the purchaser." NRS 113.130(1)(b). If the seller does not agree to remedy the situation, the purchaser may rescind the purchase agreement or may "[c]lose escrow and accept the property with the defect as revealed by the seller or the seller's agent without further recourse." *Id.*

Importantly, a seller need not disclose defects of which the seller is not aware, "[a] completed disclosure form does not constitute an express or implied warranty regarding any condition" of the property, and these disclosures do not relieve a purchaser of "the duty to exercise reasonable care to protect himself or herself." NRS 113.140.

To establish a claim for intentional misrepresentation, a plaintiff must prove "(1) a false representation [was] made with either knowledge or belief that it [was] false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result[ed] from this reliance." *Nelson*, 123 Nev. at 225, 163 P.3d at 426. "With respect to the false representation element, the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation." *Id.* (internal quotation marks omitted).

In this matter, it is undisputed that Swanson filled out the SRPD form at least ten days before the property was conveyed and provided it to the Folinos, as NRS 113.130(1)(a) required. Additionally, it is undisputed that Swanson provided an addendum before conveyance disclosing the newly-discovered defect, satisfying NRS 113.130(1)(b). Finally, it is undisputed that the Folinos decided to close escrow, aware of the new leak under repair and pending mold testing. However, the Folinos contend Swanson was required to disclose all prior water leaks in the property, regardless of whether they were repaired.

To begin, regarding the Folinos's contention that the SRPD language changed, even if the SRPD form language changed, the underlying statutes and regulations governing the SRPD form have not changed since *Nelson*. *See* NRS 113.120; 1995 Nev. Stat., ch. 334, § 3, at 842 (establishing process for regulations for format and content of SRPD form; added in 1995); *see also* NAC 113.150; Adopted Regulation of the Real Estate Div. of the Dep't of Bus. & Indus., LCB File No. R132-96 (1998) (detailing the contents and format for SRPD form; last amended in 1998). Furthermore, none of the relevant statutes in NRS Chapter 113 related to the form and required disclosures have changed. *See* NRS 113.100-.150.[1] Accordingly, the Folinos have not shown any changes to the underlying law warranting reconsideration of *Nelson*. *See Miller v. Burk,* 124 Nev. 579, 597, 188 P.3d

---

[1]NRS 113.135 (regarding soil reports) was amended in 2015 but is not relevant here. *See* 2015 Nev. Stat., ch. 2, § 19, at 18. Additionally, NRS 113.130 (regarding completion and service of the form and discovery of new defects) was amended in 2011, and again twice in 2021, but the amendments are not relevant here. *See* 2021 Nev. Stat., ch. 232, § 1, at 1081-82; 2021 Nev. Stat., ch. 209, § 3, at 961; 2011 Nev. Stat., ch. 456, § 34, at 2832-33.

1112, 1124 (2008) (explaining that prior "decisions now hold positions of permanence in this court's jurisprudence" under stare decisis); *see also Payne v. Tennessee*, 501 U.S. 808, 828 (1991) (noting that, "[c]onsiderations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved").

*Nelson* involved the sale of a residential property where there was previous water damage stemming from a leak in the property that required extensive repairs. *Nelson*, 123 Nev. at 219-20, 163 P.3d at 422-23. The seller did not disclose the leak, damage, or repairs on the SRPD form when she sold the property four years later. *Id.* at 220, 163 P.3d at 422-23. After the sale of the property, the purchaser discovered mold and learned about the prior water damage, and brought claims against the seller for breach of contract under NRS Chapter 113 and intentional misrepresentation, among other claims. *Id.* at 220-21, 163 P.3d at 423.

On appeal, this court determined the seller complied with NRS Chapter 113 because there were no water or mold defects the seller was aware of and required to disclose on the SRPD form at the time of sale. *Id.* at 225, 227, 163 P.3d at 425-27. The seller did not have a duty to disclose the prior water problems because the damage was repaired and the prior leak was no longer a condition that materially adversely impacted the value or use of the property. *Id.* at 224-25, 163 P.3d at 425.

Additionally, the purchaser's claim for intentional misrepresentation failed because the seller was not required to disclose the prior water damage and the purchaser did not establish that the mold was proximately caused by the prior water damage. *Id.* at 226, 163 P.3d at 426. Regarding intentional misrepresentation, this court explained that because "[the purchaser] did not offer any evidence to establish that [the seller]

Supreme Court
OF
Nevada

(O) 1947A

7

knew or should have known that the water damage, which was repaired by a licensed contractor, was a material factor [the purchaser] would have considered when purchasing the cabin[,] . . . [the purchaser] failed to establish that [the seller] was bound in good faith to disclose the repaired water damage or that she intended for him to rely on her omission." *Id.* at 226 n.25, 163 P.3d at 426 n.25.

Accordingly, in this matter, Swanson only needed to disclose a defect—a condition materially adversely affecting the value or use of the property—if Swanson was aware of it before conveyance. *See* NRS 113.100(1); NRS 113.140; *Nelson*, 123 Nev. at 220, 163 P.3d at 422. And, "[o]nce water damage was repaired . . . it no longer constituted a condition that materially lessened the value or use of the [property]." *Nelson*, 123 Nev. at 224, 163 P.3d at 425. Put simply, Swanson did not need to disclose the repaired prior water damage or any remediated mold. *Id.* at 224-25, 163 P.3d at 425.

While the Folinos contend the prior issues may not have been fully repaired because subsequent issues occurred, the inquiry regarding what Swanson had to disclose addresses what defects Swanson was aware of when the SRPD form was completed. *See id.* at 223-25, 163 P.3d at 425-26; *see also* NRS 113.140(1). Even if there were issues with the repairs or Rakeman's ability to provide proper evidence about the repairs, *Swanson's awareness* was that the leaks were repaired.

Regarding the ceiling leak observed once in 2015, the Folinos did not present evidence that this was an ongoing issue impacting the value or use of the property. *Wood*, 121 Nev. at 730-31, 121 P.3d at 1030-31 (explaining that a party may not rely on mere allegations to survive summary judgment).

Therefore, Swanson did not violate NRS Chapter 113 by not disclosing prior, repaired leaks. Furthermore, Swanson did not engage in intentional misrepresentation because Swanson was not "bound in good faith to disclose" the prior issues in the property. *Id.* at 225, 163 P.3d at 426 (internal quotation marks omitted). The Folinos's claim is solely based on Swanson's answers on the SRPD form. We conclude the intentional misrepresentation claim fails because Swanson was not required to disclose repaired issues that no longer amounted to a condition materially impacting the use or value of the property. *See Nelson*, 123 Nev. at 224, 163 P.3d at 425. To determine otherwise would require every residential property owner to keep extensive records of any issue that ever occurs in their property, no matter how minor, or be subject to litigation over even a drip observed one time. That is not what the statute behind the SRPD form, which has not changed since this court decided *Nelson*, requires from sellers. *See* NRS 113.120. And the SRPD form itself directs sellers to "disclose any and all known conditions and aspects of the property which materially affect the value or use of the residential property in an adverse manner . . . ." Because we determine the claim fails on the first element of intentional misrepresentation, we need not analyze the other elements, as summary judgment on a claim is proper if one essential element is missing. *See Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992) ("Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper.").

Accordingly, the district court properly granted summary judgment in this matter because there were no outstanding issues of material fact and Swanson was entitled to judgment as a matter of law. *See*

NRCP 56(a). Swanson was not required to disclose the prior water leaks or mold issues that were repaired because they no longer constituted defects materially adversely impacting the property. *See Nelson*, 123 Nev. at 220, 163 P.3d at 422. And Swanson properly informed the Folinos about the leak that occurred before the close of escrow, including a plan to repair the issue, and the Folinos chose to move forward with closing on the property. *See* NRS 113.130(1)(b). We therefore conclude the district court did not err in granting summary judgment.

*The district court did not abuse its discretion in awarding Swanson attorney fees and costs*

The Folinos argue that the district court abused its discretion in awarding Swanson attorney fees and costs, asserting that the district court disregarded controlling law in granting summary judgment.

This court generally reviews an award for attorney fees and costs for an abuse of discretion. *Logan v. Abe*, 131 Nev. 260, 266-67, 350 P.3d 1139, 1143-44 (2015). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Skender v. Brunsonbuilt Constr. & Dev. Co., LLC*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006) (internal quotation marks omitted).

Under NRCP 68(f)(1), if an offeree rejects an offer and does not obtain a more favorable judgment, the offeree must pay the costs, expenses, and reasonable attorney fees incurred post-offer by the offerer. In awarding fees and costs, the district court must evaluate the *Beattie* factors, including whether (1) the plaintiff brought its claims in good faith; (2) the defendant's offer, in timing and amount, was reasonable and in good faith; (3) the plaintiff's decision to reject the offer "was grossly unreasonable or in bad faith"; and (4) the fees sought by the defendant are reasonable and justified. *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983). The court

may award up to the full amount requested where warranted, after weighing these factors. *Id.* at 589, P.2d at 274; *see also Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252 n.16, 955 P.2d 661, 673 n.16 (1998) ("[N]o one factor under *Beattie* is determinative and [the district court] has broad discretion to grant the request so long as all appropriate factors are considered."). To determine a reasonable amount of attorney fees—the fourth *Beattie* factor—the district court must consider the four *Brunzell* factors, including (1) the attorney's professional qualities and experience, (2) the complexity and nature of the litigation, (3) the work performed by the attorney, and (4) the result. *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

Following its summary judgment, the district court entertained Swanson's motion for fees and costs, and ultimately awarded Swanson $39,447 in attorney fees and $5,840 in costs after fully analyzing the required factors. The court awarded attorney fees and costs incurred, under NRCP 68, since the date Swanson made an offer of judgment to the Folinos in the amount of $150,000.[2]

The Folinos argue the district court erred in determining the second *Beattie* factor regarding the timing of Swanson's offer because they contend the settlement offer came too early. The Folinos assert that they were not able to fairly assess their claims because Swanson made the settlement offer during the discovery period and Swanson had not yet filed an answer.

---

[2]Although the district court also analyzed attorney fees and costs under NRS 18.010 and NRS 18.020, the court expressly limited its award to fees and costs under NRCP 68.

We conclude the district court did not err when it determined the timing of Swanson's offer was reasonable and made in good faith to settle the case. NRCP 68(a) states, *"At any time more than 21 days before trial, any party may serve an offer in writing to allow judgment . . . ."* (Emphasis added). Because Swanson made the offer of judgment at least 21 days before trial, a year after the Folinos filed the initial complaint, and the Folinos had conducted some discovery before the offer was made, we conclude the district court's decision was not arbitrary or capricious. *Schouweiler v. Yancey Co.*, 101 Nev. 827, 833, 712 P.2d 786, 790 (1985) ("Unless the trial court's exercise of discretion [in evaluating the *Beattie*] factors is arbitrary or capricious, this court will not disturb the lower court's ruling on appeal."). Accordingly, because Swanson was the prevailing party and the Folinos did not accept Swanson's offer, the district court did not abuse its discretion when it awarded Swanson fees and costs incurred since the time of the offer under NRCP 68. Accordingly, we

ORDER the judgments of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

cc: Chief Judge, Eighth Judicial District Court
James A. Kohl, Settlement Judge
Black & Wadhams
Christopher M. Young, PC
The Galliher Law Firm
Eighth District Court, Department 24

SUPREME COURT
OF
NEVADA

(O) 1947A